MOE SIEGEL et al., Appellants, v. JACK KRANIS, Respondent.

Second Department, March 25, 1968.

*Foley & Hickey* (*Richard G. Hickey* of counsel), for appellants.
*Michael J. Horowitz* and *Murray A. Gordon* for respondent.

HOPKINS, J. The action is in malpractice against an attorney. Plaintiffs' complaint, consisting of two causes, has been dismissed as barred by the Statute of Limitations (CPLR 3211, subd. [a], par. 5). This appeal challenges the correctness of the determination.

The plaintiffs Moe Siegel and Ethel Siegel are husband and wife and the plaintiff Burton Siegel is their son. On February 15, 1960 an automobile operated by Moe Siegel, in which Ethel and Burton Siegel were passengers, collided with an automobile operated by Roland Rouse and owned by Fred Battles. According to the complaint, the accident was caused by Rouse's negligence. The automobile operated by Rouse had not been registered by Battles. As a result of the collision, all three plaintiffs sustained injuries.

The plaintiffs retained the defendant on March 2, 1960 to prosecute an action to recover damages for their injuries. The defendant did not assert a claim or institute an action against either Battles or Rouse. He filed a claim with the Motor Vehicle Accident Indemnification Corporation ('' MVAIC '') on August 11, 1960. The claim was rejected by MVAIC on September 28, 1960 on the ground that it had not been filed within the prescribed statutory period of 90 days after the accident. On November 15, 1962 the defendant demanded arbitration of the claim. Thereafter, his son was substituted as the plaintiffs' attorney, as the defendant was unable to represent them further. On May 25, 1964 the Supreme Court, New York County, stayed arbitration pending a trial by jury with respect to the timeliness of the filing of the claim.

A jury found adversely to the plaintiffs on this issue after trial on September 23, 1965; and on October 7, 1965 the Supreme Court made an order staying arbitration. Commencement of this action followed on June 17, 1966. In their complaint the plaintiffs allege causes of action based first on malpractice and secondly on breach of contract. For our purposes we consider both causes together, since the shorter Statute of Limitations applies when an injury is suffered as the result of malpractice, though the relationship between the parties originated in contract (*Glens Falls Ins. Co.* v. *Reynolds,* 3 A D 2d 686; *Carr* v.

*Lipshie,* 8 A D 2d 330, affd. 9 N Y 2d 983; *Klein* v. *Parke-Bernet Galleries,* 21 A D 2d 772; *Mamunes* v. *Williamsburgh Gen. Hosp.,* 28 A D 2d 998). Indeed, as the critical date for filing the claim against MVAIC was May 15, 1960 (90 days after Feb. 15, 1960) and this action was not commenced until June 17, 1966, even the six-year Statute of Limitations applicable to contract actions would not avail the plaintiffs.

The question which we must answer is whether the plaintiffs' action against the defendant accrued on May 15, 1960, when the time to file the claim expired, or whether it accrued on September 23, 1965,* when the jury decided that the claim actually filed by the defendant was untimely. In the first event the action is barred; in the second event the action may proceed.

Though an attorney may not be liable for errors of judgment or the use of imprudent discretion in the management of litigation (*Byrnes* v. *Palmer,* 18 App. Div. 1, 4, affd. 160 N. Y. 699), he must exercise ordinary skill and diligence in his representation of clients in the course of litigation (*Savings Bank* v. *Ward,* 100 U. S. 195; *Rapuzzi* v. *Stetson,* 160 App. Div. 150, 157). Thus, he may be liable for his ignorance of the rules of practice (*Von Wallhoffen* v. *Newcombe,* 10 Hun 236, 240), for his failure to comply with the requirements of notice precedent to suit (cf. *Sikora* v. *Steinberg,* 40 Misc 2d 649, affd. 20 A D 2d 852; *McLellan* v. *Fuller,* 226 Mass. 374), or for his neglect to prosecute or defend an action (*Hamilton* v. *Dannenberg,* 239 App. Div. 155, 156).

Cases there are which measure the operation of the Statute of Limitations from the date of the act (or omission) of the attorney from which the injury arose (e.g., *Bland* v. *Smith,* 197 Tenn. 683; *Jensen* v. *Sprigg,* 84 Cal. App. 519). These decisions reflect the view once prevailing in medical malpractice suits in New York that the period of limitation runs from the incidence of the wrongful conduct (*Conklin* v. *Draper,* 254 N. Y. 620; *Gross* v. *Wise,* 16 A D 2d 682). But that view no longer is the rule. `` We hold that at least when the course of treatment which includes the wrongful acts or omissions has run continuously

---

* The record contains evidence that the defendant's son sent a letter dated September 13, 1965 to plaintiff Burton L. Siegel advising him that a jury trial with respect to the plaintiffs' claim against MVAIC was to be held on September 14 but that his presence was not necessary; and that the defendant's son sent a subsequent (undated) letter to plaintiff Moe Siegel on September 28, 1965 advising him of the adverse jury verdict. The September 23 date is used for the purpose of the discussion in this opinion because of the lack of certainty as to precisely when knowledge was brought home to the plaintiffs of the existence of the issue of timeliness of the filing of the claim and of the fact of the adverse jury verdict.

and is related to the same original condition or complaint, the ' accrual ' comes only at the end of the treatment " (*Borgia* v. *City of New York*, 12 N Y 2d 151, 155; see, also, *Stern* v. *Hausberg*, 22 A D 2d 669).

We believe that the rule is equally relevant to the conduct of litigation by attorneys. The resemblance between the continuous treatment of a condition of a patient by a physician and the continuous representation of a client in a lawsuit by an attorney is more than superficial. In both instances the relationship between the parties is marked by trust and confidence; in both there is presented an aspect of the relationship not sporadic but developing; and in both the recipient of the service is necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed. The observation made by Chief Judge DESMOND in *Borgia* (*supra*, p. 156) that it would be ludicrous to expect a patient to interrupt a course of treatment by suing the delinquent doctor holds true as well in the case of a client who has confided his cause to an attorney. The client is hardly in a position to know the intricacies of the practice or whether the necessary steps in the action have been taken. For better or for worse, the client must depend on his attorney to pursue the litigation diligently and according to the rules. But the client is entitled to a standard of representation which the ordinary skill and diligence of an attorney would require.

The fairness of applying the " continuous treatment " doctrine to the attorney-client relationship is strikingly demonstrated in this appeal. The negligence which the plaintiffs assert could not come to light until the conclusion of the litigation, that is, when the permanent stay of arbitration resulted because of the late service of the notice of claim. Surely it would be premature and even presumptuous of the plaintiffs to institute an action against the defendant prior to the definitive determination through the process of the court of the defect in complying with the statutory mandates.

We note, too, that a contrary rule concerning the accrual of a cause of action against an attorney for malpractice in the management of litigation might well lead to procrastination by the attorney to postpone the inevitable event of defeat. The author of the disaster should not be enabled to chart the strategy to avoid the liability for his own negligence. Otherwise, negligence could be disguised by the device of delay, and an attorney rewarded by immunity from the consequence of his negligence.

Moreover, in the context of this appeal, it does not appear that the plaintiffs were ever fully advised of the pendency of

the trial to determine the issue relating to the filing of the notice, save at a time shortly before trial. At this point the plaintiffs were literally helpless to do more than await the outcome.

We do not, of course, mean to imply that the negligence of the defendant has been established or that the plaintiffs are entitled to recover. All that we now hold is that the plaintiffs' action is not arrested by the Statute of Limitations.

The order should be reversed insofar as appealed from, on the law, with $10 costs and disbursements, and the defendant's motion to dismiss the complaint denied, with leave to the defendant to answer the complaint. The time to answer the complaint should be extended until 20 days after entry of the order hereon.

BELDOCK, P. J., CHRIST, RABIN and MUNDER, JJ., concur.

Order reversed insofar as appealed from, on the law, with $10 costs and disbursements, and said motion denied, with leave to defendant to answer the complaint. The time to answer the complaint is extended until 20 days after entry of the order hereon.